IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | **CRIMINAL NO. 1:20-CR-221** |
| : | |
| **v.** : | **(Judge Neary)** |
| : | |
| **ARIC ANDREW KRAFT,** : | |
| : | |
| **Defendant** : | |

### MEMORANDUM

Defendant Aric Andrew Kraft was indicted in September 2020 for possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1), after having previously been convicted of three state felony drug offenses. (Doc. 106). The government seeks to apply the 15-year mandatory minimum sentencing enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), due to Kraft's previous convictions. (Doc. 106 at 2-3). Kraft requests the court find his 2016 conviction for possession with intent to distribute heroin does not serve as a third predicate offense under ACCA because, he argues, heroin is defined more broadly under Pennsylvania law than under federal law.[1] (Doc. 114). The court will grant Kraft's motion.

I.   **Factual Background & Procedural History**

This is not Kraft's first run-in with the law. In July 2011, Kraft pleaded guilty and no contest in the York County Court of Common Pleas to two counts of

---

[1] Kraft was also convicted of involuntary manslaughter in 2016 and argues this conviction cannot count as a predicate offense under ACCA. (Doc. 115 at 5-6). The government concedes it does not seek the ACCA enhancement on this basis. (Doc. 122 at 4 n.1).

manufacture, deliver, or possession with intent to manufacture or distribute cocaine in violation of 35 P.S. § 780–113(a)(30). (Doc. 100-3 at 1, 10). In July 2014, Kraft pleaded guilty in the York County Court of Common Pleas to one count of manufacture, deliver, or possession with intent to manufacture or distribute cocaine in violation of 35 P.S. § 780–113(a)(30). (Doc. 100-2 at 1, 7). And in March 2016, Kraft pleaded guilty in the York County Court of Common Pleas to one count of manufacture, deliver, or possession with intent to manufacture or distribute heroin, in violation of 35 P.S. § 780–113(a)(30), and one count of involuntary manslaughter, in violation of 18 Pa. C.S. § 2504(a). (Doc. 100-1 at 1, 12).

Now comes the current charge, originally brought in September 2020, when Kraft was indicted in this court on one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). The original indictment did not seek the ACCA sentencing enhancement. (Id.). In July 2023, Kraft filed a motion to dismiss arguing Section 922(g)(1) is unconstitutional under New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1 (2022). (Doc. 79). The court denied Kraft's motion to dismiss in November 2024. (Doc. 101).

The government then filed a superseding indictment in February 2025 which, while still charging Kraft with one count for possession of a firearm by a prohibited person, also sought the ACCA sentencing enhancement due to Kraft's "three felony convictions for a serious drug offense." (Doc. 106 at 2). Kraft filed the instant pretrial motion in March 2025. (Doc. 114). This motion is fully briefed and is ripe for disposition. (See Docs. 115, 122, 127).

II. **Discussion**[2]

ACCA imposes a fifteen-year mandatory minimum sentence on defendants convicted under Section 922(g), who previously were convicted of, as relevant here, at least three serious drug offenses. 18 U.S.C. § 924(e)(1). A "serious drug offense" includes state offenses "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" as defined by 21 U.S.C. § 802 which carry a maximum term of imprisonment of at least 10 years. 18 U.S.C. § 924(e)(2)(A)(ii). To qualify as an ACCA predicate, "the drugs on the federal and state schedules" must match at the time "the state drug offense was committed." Brown v. United States, 602 U.S. 101, 119 (2024).

Courts employ one of two methods to determine whether a prior conviction constitutes a serious drug offense under ACCA: (1) the "categorial approach" and (2) the "modified categorical approach." Descamps v. United States, 570 U.S. 254, 257 (2013). The categorical approach requires courts to look "only to the statutory definitions of the prior offenses," not the "the facts underlying the prior convictions," Taylor v. United States, 495 U.S. 575, 600 (1990), nor "the label a State assigns to a crime." Mathis v. United States, 579 U.S. 500, 509 (2016).

In Taylor, the Supreme Court envisioned a "narrow range of cases" where courts may look beyond the four corners of the state statute. Taylor, 495 U.S. at 602. These cases, which employ the modified categorical approach, occur "when a prior

---

[2] The court must decide every pretrial motion before trial unless good cause exists to defer its ruling. FED. R. CRIM. P. 12(d).

conviction is for violating a so-called 'divisible statute.'" Descamps, 570 U.S. at 257. A statute is divisible where it "sets out one or more elements of the offense in the alternative," making it unclear which element "played a part in the defendant's conviction," Id. at 257, 260. In order "to determine which of the alternative elements was involved in the defendant's conviction," United States v. Abbott, 748 F.3d 154, 157-58 (3d Cir. 2014), the modified categorical approach permits courts to consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Shepard v. United States, 544 U.S. 13, 26 (2005).

The Supreme Court explained in Mathis that "the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." Mathis, 579 U.S. at 513. Elements, in the context of a plea hearing,[3] "are what the defendant necessarily admits when he pleads guilty." Id. at 504.

When faced with an alternatively phrased statute, a court must first "determine whether its listed items are elements or means." Id. at 517. If the listed items are elements, then the court may examine the Shepard documents to "discover which of the enumerated alternatives played a part in the defendant's prior conviction." Id. But if they are means, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." Id. Put simply,

---

[3] All three of Kraft's drug convictions were obtained by a guilty plea. (See Doc. 100-1 at 1; Doc. 100-2 at 1; Doc. 100-3 at 1).

4

ACCA is "indifferen[t] to how a defendant actually committed a prior offense." Id. Federal courts have two places to look in making this threshold determination: (1) a state court decision that "definitively answers the question," and, if state law is inconclusive, then (2) the Shepard documents "for the sole and limited purpose of determining whether the listed items are elements of the offense." Id. at 517-18 (cleaned up).

Kraft argues that his 2016 drug conviction does not qualify as a predicate offense because Pennsylvania law defines heroin more broadly than does federal law: while federal law limits the definition of an isomer of heroin to an "optical isomer," Pennsylvania law does not define the term isomer and thus encompasses non-optical isomers, too. (Doc. 115 at 2-5). The government contends that Kraft's motion should be denied because his 2016 conviction "involved trafficking heroin (not a non-optical isomer of heroin, which is a different substance)" and because "Pennsylvania law, like federal law, does not criminalize non-optical isomers of heroin and thus is not overbroad." (Doc. 122 at 1).

The parties agree that Kraft's 2011 and 2014 drug convictions qualify as predicate offenses under ACCA. (Doc. 127 at 2). Kraft does not, because he cannot, contest that the 2016 conviction was punishable by 10 years or more. (Cf. Doc. 122 at 7; 35 P.S. § 780-113(f)(1)). So too does Kraft concede that the modified categorical approach applies. (Doc. 122 at 7; see also Abbott, 784 F.3d at 159 (holding that 35 P.S. § 780–113(a)(30) "is divisible and, as such, convictions are properly assessed under the modified categorical approach."). And so, the modified categorical

5

approach applies to resolve the parties' disagreement: whether Kraft's 2016 drug conviction qualifies as a third ACCA predicate.

It does not. At first blush, the statutes may look identical: both 21 U.S.C. § 812(b)(10) and 35 P.S. § 780-104(1)(ii)(10) encompass "any of the following opium derivatives, their salts, isomers, and salts of isomers . . . whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation . . . [h]eroin." But whereas Pennsylvania law does not define the term "isomer," federal law defines "isomer" to mean "optical isomer." 21 U.S.C. § 802(14). Therefore, as other courts within our circuit have recognized, Pennsylvania law defines heroin more broadly—by encompassing both optical and non-optical isomers of heroin—than federal law. See United States v. Myrick, No. CR 19-354, 2023 WL 2351693, at *4 (E.D. Pa. Mar. 2, 2023) (determining that "someone could be charged with possessing a non-optical isomer of heroin under Pennsylvania law but not under federal law."); United States v. Espy, No. 18-332, 2022 WL 247833, at *3 (W.D. Pa. Jan. 27, 2022) (recognizing that "the Pennsylvania definition of heroin covers a wider range of conduct than the federal definition.").

The government, however, argues Pennsylvania's drug possession and distribution statute is divisible by drug type, that heroin and isomers of heroin are two separate drug types (and thus elements), and that an examination of the Shepard documents demonstrates that Kraft possessed heroin, not an isomer of heroin. (Doc. 122 at 13-15).

While our court of appeals has indeed explained that 35 P.S. § 780–113(a)(30) is divisible by drug type, Abbott, 784 F.3d at 159; United States v. Brown, 47 F.4th

6

147, 150 n.1 (3d Cir. 2022), aff'd, 602 U.S. 101 (2024), Abbott makes clear that drug type means what it says—the type of drug, not the form of it. Abbott, 784 F.3d at 159. So, for example, barbital and marijuana are different drug types with varying punishments. Id.; see also United States v. Henderson, 841 F.3d 623, 629 (3d Cir. 2016) (observing that the controlled substances are "distinct elements of the crime; not means of committing the crime."). But none of the cases on which the government relies supports the government's proposition that 35 P.S. § 780–113(a)(30) is divisible by the different *forms* of the same drug (*e.g.,* heroin and isomers of heroin). Whether a defendant possessed heroin, or an isomer of heroin, is of no moment—in both cases, he has violated 35 P.S. § 780–113(a)(30) by possessing heroin as defined by 35 P.S. § 780-104(1)(ii)(10). And so, the various forms of heroin are merely disparate means of reaching the same end. Put simply, "it is clear on the face of these statutes that Pennsylvania's is broader [.]" Myrick, 2023 WL 2351693, at *4.

      An examination of state law does not change this result. Consider Com. v. Swavely, 554 A.2d 946 (Pa. Super. Ct. 1989). In Swavely, the defendant was convicted of possessing with intent to distribute two different controlled substances which appear on two different schedules of drugs, Tuinal and Talwin, and sentenced to two consecutive terms of imprisonment. Id. at 947. The court rejected the defendant's Double Jeopardy challenge to his conviction because the punishments for "two *different* drugs" were set forth "in separate statutory provisions." Id. at 951 (emphasis in original). Notably, the court observed that, in a hypothetical drug sale "of two different forms of the same substance" where both

7

fall into the same statutory definition, "only one type of controlled substance has been provided[.]" Id. at 951. As a result, Swavely "definitively answers the question" that possessing different forms of heroin are disparate means of committing the same offense. Mathis, 579 U.S. at 517. And because it does, the court need not examine the Shepard documents to reach the conclusion that heroin and isomers of heroin are not alternative elements.[4] Id. at 517-58.

In sum, a conviction under 35 P.S. § 780–113(a)(30) could result from, among other things, the possession of non-optical isomers of heroin, while a conviction under federal law could not. Therefore, Kraft's 2016 conviction cannot constitute as a third ACCA predicate offense.

The government raises two additional points, neither of which alter this holding. First, the government has submitted an expert declaration contending, in part, that "non-optical isomers . . . are not considered heroin; they are different compounds with different names." (Doc. 122-4 at 3). This court declines to adopt the findings of that declaration—namely, that non-optical isomers of heroin are not technically heroin—for two reasons. First, "the court is not equipped to make scientific conclusions about the chemical structure of non-optical isomer heroin [.]" Myrick, 2023 WL 2351693, at *6. And second, such a reading "would render the exceptions to the heroin definition effectively meaningless." Id.; see also Geisinger

---

[4] While another judge in this court recently observed that Swavely is unclear "whether an enumerated substance and isomers of that substance are separate elements," United States v. Bell, No. 3:23-CR-26, 2024 WL 1892283, at *8 (M.D. Pa. Apr. 30, 2024), he nevertheless arrived at the same conclusion that "isomers of heroin are not an element of § 780-113(a)(30) alternative to heroin itself." Id. at *10.

8

Cmty. Med. Ctr. v. Sec'y U.S. Dep't of Health & Human Servs., 794 F.3d 383, 392 (3d Cir. 2015) ("One of our 'most basic interpretive canons' is that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'") (quoting Corley v. United States, 556 U.S. 303, 314 (2009)).

Second, the government asserts that Kraft has not demonstrated a "'realistic probability, not a theoretic possibility, that Pennsylvania would apply its statute to' a non-qualifying controlled substance." (Doc. 122 at 16 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)). But because Pennsylvania law "plainly encompasses more conduct than its federal counterpart," Kraft bears no such burden. Salmoran v. Att'y Gen. United States, 909 F.3d 73, 82 (3d Cir. 2018); accord Myrick, 2023 WL 2351693, at *5.

### III. Conclusion

The government seeks to apply the ACCA sentencing enhancement due to Kraft's three prior drug convictions. But because Pennsylvania law defines isomer more broadly than does its federal counterpart, Kraft's 2016 drug conviction does not qualify as an ACCA predicate. Therefore, the court will grant Kraft's pretrial motion. (Doc. 114). An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:   June 30, 2025